No. 24-3188

---

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MI FAMILIA VOTA, ET AL.,

*Plaintiffs-Appellees*,

v.

ADRIAN FONTES, ET AL.,

*Defendants-Appellees,*

WARREN PETERSEN, ET AL.,

*Intervenor-Defendants-Appellants*.

On Appeal from the United States District Court
for the District of Arizona, No. 2:22-CV-00509 (Bolton, J.)

## BRIEF OF NON-U.S. APPELLEES IN OPPOSITION TO INTERVENORS' PETITION FOR REHEARING EN BANC

# TABLE OF CONTENTS

INTRODUCTION ................................................................................1

BACKGROUND ................................................................................1

ARGUMENT ......................................................................................3

    I.    The Panel Correctly Held That the NVRA Preempts Arizona's
Restrictions on Mail Voting and Presidential Voting .................3

         A. Mail Voting ....................................................................4

         B. Presidential Voting.........................................................6

    II.    The Panel's Holding That H.B. 2243's Program to Remove Voters from
the Rolls Systematically Violates The 90-Day Provision of The NVRA
Does Not Warrant Rehearing ....................................................8

    III.    Intervenors Provide No Basis to Disturb the Panel's Holdings as to the
DPOC And DPOR Requirements ............................................10

         A. *LULAC* Decree ...............................................................11

         B. NVRA.............................................................................15

CONCLUSION ...............................................................................17

i

# TABLE OF AUTHORITIES

**Cases** **Page**

*Arcia v. Florida Secretary of State*, 772 F.3d 1335 (11th Cir. 2014) ........................9

*Arizona v. Inter Tribal Council of Arizona, Inc.*,
    570 U.S. 1 (2013) (*ITCA*) ..........................................1, 4, 5, 11, 16, 17,

*Beals v. VA Coalition for Immigrant Rights*,
    No. 24A407, 2024 WL 4605223 (Oct. 27, 2024) ................................10

*Beals v. VA Coalition for Immigrant Rights*,
    No. 24A407, 2024 WL 4608863 (Oct. 30, 2024) ................................10

*Bell v. Marinko*, 367 F.3d 588 (6th Cir. 2004) ........................................9

*Fish v. Kobach*, 840 F.3d 710 (10th Cir. 2016) ......................................15

*Gonzalez v. Arizona*, 485 F.3d 1041 (9th Cir. 2007) (*Gonzales I*) ......................5, 16

*Gonzalez v. Arizona*, 677 F.3d 383 (9th Cir. 2012) ..................................16

*Hook v. Arizona Department of Corrections*,
    972 F.2d 1012 (9th Cir. 1992) ..................................................11, 15

*Horne v. Flores*, 557 U.S. 433 (2009) ..................................................14

*Kobach v. U.S. Election Assistance Commission*,
    772 F.3d 1183 (10th Cir. 2014) ..............................................5, 11

*Martin v. Wilks*, 490 U.S. 755 (1989) ..................................................15

*McPherson v. Blacker*, 146 U.S. 1 (1892) ..............................................7

*Merrill v. Milligan*, 142 S. Ct. 879 (2022) ............................................10

*Miller v. French*, 530 U.S. 327 (2000) ................................................13

*Purcell v. Gonzalez*, 549 U.S. 1 (2006) ................................................2

*Republican National Committee v. Mi Familia Vota*, 145 S. Ct. 108 (2024) ...........3

*Republican National Committee v. Mi Familia Vota*,
    No. 24A164, 2024 WL 3795482 (Aug. 8, 2024) ................................10

*Republican Party of Minnesota v. White*, 536 U.S. 765 (2002) ................................7

ii

*Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367 (1992) ................................12

*Smiley v. Holm*, 285 U.S. 355 (1932) ....................................................................8

*Taylor v. United States*, 181 F.3d 1017 (9th Cir. 1999) ....................................11, 13

*Thompson v. U.S. Department of Housing & Urban Development*,
   404 F.3d 821 (4th Cir. 2005) .........................................................................11

*United States Student Association Foundation v. Land*,
   546 F.3d 373 (6th Cir. 2008) ..........................................................................9

**Statutes and Rules**

52 U.S.C. §20504(c)(2)(C) ...................................................................................15

52 U.S.C. §20506(a)(6) .........................................................................................17

52 U.S.C. §20507(c)(2) ...........................................................................................8

52 U.S.C. §20508(b)(2) ...........................................................................................5

A.R.S. §16-121.01(C) ........................................................................................3, 13

A.R.S. §16-152(A)(14) .........................................................................................15

A.R.S. §16-166(F) ................................................................................................11

Fed. R. App. P. 40(b)(2) .....................................................................................1, 3

**Other Authorities**

Consent Decree, *League of United Latin American Citizens of Arizona v. Reagan*,
   No. 2:17-cv-04102-DGC (D. Ariz. June 18, 2018) ............................................2

## INTRODUCTION

The panel applied established law in holding that numerous provisions of two Arizona voting laws—House Bills (H.B.) 2492 and 2243—are unlawful. Indeed, the Supreme Court's decision in *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1 (2013) (*ITCA*), by itself, largely decides this matter. *ITCA* held that the National Voter Registration Act (NVRA) preempted an Arizona law that required people to provide documentary proof of citizenship (DPOC) to register to vote in federal elections. *Id.* at 10. Restrictions in H.B. 2492 and 2243 conflict with (and seek to circumvent) *ITCA*. For example, the laws penalize people who do not provide DPOC when they register, including by barring them from voting in presidential elections and denying them the option to vote by mail (the method most Arizonans have long used to vote) in congressional elections.

Intervenors identify no conflict or "question[] of exceptional importance" warranting rehearing en banc, Fed. R. App. P. 40(b)(2). The petition should be denied.

## BACKGROUND

Plaintiffs in these eight consolidated cases sued to challenge H.B. 2492 and 2243 as violating federal law. Based on *ITCA* and other binding precedent, the district court held that the NVRA precludes enforcement of the provisions of H.B. 2492 that impose distinct restrictions on people who did not provide DPOC when registering by barring them from voting in presidential elections or in congressional

1

elections by mail. 1-ER-125. The court also held that the consent decree entered in *League of United Latin American Citizens of Arizona v. Reagan*, No. 2:17-cv-04102-DGC (D. Ariz. June 18, 2018) (*LULAC* Decree)—a decree no party has ever sought to set aside—as well as the NVRA preclude enforcement of H.B. 2492's provision mandating that election officials reject *state*-form applications submitted without DPOC, even though identically situated *federal*-form applicants are registered for federal elections. 1-ER-137. Finally, the court held that H.B. 2492's provision requiring documentary proof of residence (DPOR) violates the NVRA, 1-ER-80–82 as does H.B. 2243's mandate to systematically remove certain voters from the rolls even during the 90 days before any federal election, 1-ER-130–133. The court's decision came after a 10-day trial and was predicated on extensive factual findings. 1-ER-7.

The Arizona Attorney General, the Arizona Secretary of State, the State of Arizona, and all 15 county recorders were named as defendants; the Republican National Committee and the then-leaders of the state legislature intervened as defendants before trial. 1-ER-48. At trial, the Attorney General vigorously defended the challenged laws, except where she judged them explicitly preempted by binding precedent. *See, e.g.*, 1-ER-121–22. But none of the State Defendants appealed any of the rulings described above. Intervenors appealed, and sought a stay from the Supreme Court, relying heavily on *Purcell v. Gonzalez*, 549 U.S. 1 (2006) (per

curiam). Stay App.7-8, 18-19. The stay was granted (by a 5-4 vote) only as to enforcement of A.R.S. §16-121.01(C), the provision mandating differential treatment of state-form and federal-form registration applications. *RNC v. Mi Familia Vota*, 145 S. Ct. 108 (2024) (mem.).

Over a dissent, the panel affirmed on all issues described above, including—for the provision just discussed—both as to the *LULAC* Decree and on the alternative ground that the provision violates the NVRA.[1]

## ARGUMENT

### I. THE PANEL CORRECTLY HELD THAT THE NVRA PREEMPTS ARIZONA'S RESTRICTIONS ON MAIL VOTING AND PRESIDENTIAL VOTING

En banc review is only appropriate when the decision conflicts with Ninth Circuit or Supreme Court precedent or raises a question of exceptional importance. Fed. R. App. P. 40(b)(2). As Plaintiffs explain below, the panel's decision follows Supreme Court and Ninth Circuit precedent, and the Intervenors' gross mischaracterization that this decision would "forc[e] States to accept foreign citizens in their voting booths" misinterprets the facts before the panel. Pet.5. Since the panel

---

[1] Cross-Appellants Promise Arizona and Southwest Voter Registration Education Project will address the arguments regarding the panel's holding as to discriminatory intent in their response to the Attorney General's rehearing petition.

In their en banc petition, Intervenor-Appellants do not address the panel's affirmance of the district court's determination that H.B. 2492's birthplace registration requirement violates the Civil Rights Act other than to adopt the arguments in the Attorney General's petition, Pet.5 n.1, and therefore non-U.S. Appellees also address those arguments in their response to the Attorney General's petition.

opinion follows the law, protects voter access to the ballot, and leaves Arizona with ample opportunities to enforce voter qualifications, there is no reason to grant en banc review.

### A. Mail Voting

Adhering to *ITCA*, the panel correctly held that the NVRA preempts H.B. 2492's restriction solely on federal-form registrants—i.e., voters who register using the form prescribed pursuant to the NVRA by the U.S. Election Assistance Commission—that do not provide DPOC by barring their access to mail voting available to all other registrants. Op.34-38.[2] As the panel explained, NVRA section 6 requires that Arizona "accept[]" the federal form "as *sufficient.*" Op.34 (quoting *ITCA*, 570 U.S. at 10). Officials who bar mail voting access only to those registrants who submitted federal forms without DPOC are treating those forms as *in*sufficient, in direct conflict with section 6. Op.36-37. The DPOC requirement also stands as an obstacle to the NVRA's purpose to "'enhance[] the participation of eligible citizens as voters in [federal] elections.'" Op.36 (quoting 52 U.S.C. §20501(b)(2)); *see also* DNC Br.15-16, 24-31. That is particularly true given that nearly 90 percent of Arizona voters cast their ballots by mail. Op.37.

---

[2] Citations to the majority opinion are cited as "Op.," to the dissent are cited as "Dissent." Citations to the Intervenors' Petition for Rehearing is cited as "Pet." Citations to the merits briefs submitted in this case are cited by referencing the Plaintiff group that submitted the brief, e.g. "DNC Br." and "LUCHA Br."

Intervenors argue that the NVRA governs registration, not voting. Pet.6. As the panel recognized however, that dichotomy would gut the NVRA's protections, with the federal form "'ceas[ing] to perform any meaningful function.'" Op.37-38 (quoting *ITCA*, 570 U.S. at 13). Intervenors also assert that the panel's opinion raises "serious constitutional doubts" by preventing Arizona from obtaining necessary citizenship information. Pet.3, 6. But the federal form requires registrants to attest under penalty of perjury that they are citizens, 52 U.S.C. §20508(b)(2), and the suggestion that Arizona can require additional proof , Pet.6-7, contradicts both *ITCA*, *see* 570 U.S. at 20, and this Court's precedent following *ITCA* (Op.54-55).[3] Intervenors also never explain why the method the NVRA authorizes for states to require additional citizenship information *if* necessary to enforce qualifications, *see ITCA*, 570 U.S. at 19, is insufficient. Pet.6-7. That is because Arizona has repeatedly *failed* to show that DPOC is necessary to enforce the citizenship qualification. *See infra* Section III.B.; *Kobach v. U.S. Election Assistance Comm'n*, 772 F.3d 1183 (10th Cir. 2014); LUCHA Br.39-41. As such, Intervenors' alleged constitutional doubts are illusory.

---

[3] For the reasons discussed *infra* in Section III.B., Intervenors misrepresent this Court's decision in *Gonzalez v. Arizona*, 485 F.3d 1041 (9th Cir. 2007) (*Gonzalez I*). Nothing in *Gonzalez* undermines the panel's decision. And, to the extent the panel's decision (at the preliminary injunction stage) in *Gonzalez* is contrary to *ITCA*'s admonition that states must accept the federal form as sufficient, it is of course abrogated by *ITCA*.

Finally, nothing in the panel's opinion forecloses all state mail-voting limitations, as Intervenors say. Pet.7. The opinion simply prevents states from circumventing the NVRA by requiring federal-form registrants to submit proof beyond what the form requires, thereby restricting the voting rights of those who register using the NVRA's protected means. *See* DNC Br.27-28. The refusal to allow a state to evade both a statute and Supreme Court precedent does not warrant rehearing.

### B. Presidential Voting

The panel correctly concluded that NVRA section 6's "accept and use" requirement preempts H.B. 2492's requirement that federal-form registrants provide DPOC to vote in presidential elections. Op.38-40. Intervenors' leading contrary argument is that despite its plain text (which encompasses presidential elections), the NVRA cannot govern those elections because Congress lacks constitutional authority to do so. Pet.8-9. That is refuted by Supreme Court and this Court's precedent recognizing that Congress has that power. Op.39-40 (citing cases); *see also* DNC Br.17-19; U.S. Br.22-24, 26-27.

Central to Intervenors' and the panel dissent's view is the mistaken assumption that Congress enacted the NVRA solely pursuant to its Elections Clause authority. Pet.9-10; Dissent.83, 88. In reality, the NVRA is a "Necessary and Proper" exercise of Congress's powers under both the Elections and Electors Clauses, as well

6

as a valid exercise (as Intervenors have conceded, DE-SER-70) of Congress's independent powers under the Fourteenth and Fifteenth Amendment. *See* DNC Br.21-23; U.S. Br.22-32. The dissent does not meaningfully engage with these arguments.

Intervenors and the panel dissent also relatedly assert that the Electors Clause gives states exclusive control over voter *qualifications*. Pet.9; Dissent.99. But the NVRA "does not regulate voter qualifications," 1-ER-127 n.6, instead setting out the *proof* of qualification that federal-form registrants must provide. In any event, exclusive authority to regulate presidential elections does not follow from states' authority over the "Manner" of presidential electors' appointment. The Supreme Court has defined "Manner" far more narrowly. *See McPherson v. Blacker*, 146 U.S. 1, 17 (1892); DNC Br.18-19; U.S. Br.24-25.

Similarly at odds with binding precedent is the dissent's assertion that the power to "disenfranchise all . . . citizens"—by selecting a manner of appointment other than popular election—necessarily suggests a power to maintain "varying levels of enfranchisement" for "only some." Dissent.88-89. The Supreme Court has rejected such greater-power-includes-the-lesser arguments, including in the election context. *See, e.g.*, *Republican Party of Minnesota v. White*, 536 U.S. 765, 788 (2002). Once a state *has* authorized popular election, moreover, the people's right to vote is "fundamental," Op.32 n.3, and Congress may "enact the numerous requirements

. . . to enforce [that] fundamental right." *Smiley v. Holm*, 285 U.S. 355, 366 (1932). In short, the dissent's crabbed view of congressional authority is wrong and does not warrant rehearing.

## II. THE PANEL'S HOLDING THAT H.B. 2243'S PROGRAM TO REMOVE VOTERS FROM THE ROLLS SYSTEMATICALLY VIOLATES THE 90-DAY PROVISION OF THE NVRA DOES NOT WARRANT REHEARING

The NVRA provides that any state program to systematically remove voters from the rolls must be completed no later than 90 days before any federal election. 52 U.S.C. §20507(c)(2). Intervenors argue that the panel departed from Sixth Circuit precedent by holding that "the NVRA prohibits Arizona from canceling non-citizen registrations within 90 days before an election[.]" Pet.10. That is not what the panel held.

Indeed, as the panel pointed out, Intervenors' briefing to the panel offered the same "mischaracteriz[ation of] the district court's holding." Op.45. In reality, the district court "never said that the NVRA [categorically] forbids removal of noncitizens from voter rolls," during the 90 days before a federal election or otherwise. *Id.* Nor did the panel so hold. What the district court held and the panel affirmed is that the NVRA forbids H.B. 2243's removal program because that program "allow[s] the *systematic* cancellation of registrations within 90 days of a[] [federal] election." *Id.* (emphasis added). That is indeed what the NVRA forbids.

In response, Intervenors point only to a decision—*Bell v. Marinko*, 367 F.3d 588 (6th Cir. 2004)—that was *not* about the 90-day provision but rather about whether removals of ineligible non-citizens could be accomplished under the NVRA at all. No party to this case nor the panel has suggested otherwise. But, in any event, the removals at issue in *Marinko* were *individualized*, *id.* at 589-591. The Sixth Circuit itself has subsequently recognized that the removals in *Marinko* were permissible precisely because they were individualized. *See U.S. Student Ass'n Foundation v. Land*, 546 F.3d 373, 386 (6th Cir. 2008). Intervenors rightly do not deny that H.B. 2243's removal program is systematic; that defeats their claim of a conflict with *Marinko*.

Moreover, while the wisdom of Congress's policy choices in enacting the 90-day provision is not for courts to second-guess, those choices make eminent sense. Congress sought to balance states' legitimate interest in ensuring that only eligible people can vote with individuals' interest in not being removed from the rolls *erroneously*, particularly at a point in time when "[e]ligible voters removed … will likely not be able to correct the State's errors in time to vote," *Arcia v. Florida Secretary of State*, 772 F.3d 1335, 1346 (11th Cir. 2014). Enforcing that balance is especially important given that, as the panel held, H.B. 2243's systematic program will "likely cause inaccurate removals." Op.49.

9

Lastly, Intervenors argue, Pet.10, that in *Beals v. VA Coalition for Immigrant Rights*, No. 24A407, 2024 WL 4608863 (Oct. 30, 2024), the Supreme Court issued a stay that is "consistent" with *Marinko*. But the stay came without explanation, and it may have been motivated by any number of considerations, including but not limited to the fact that the district court's injunction there was issued just a few weeks before the election, implicating the *Purcell* principle. *See Beals v. VA Coalition for Immigrant Rights*, No. 24A407, 2024 WL 4605223, at 13-15 (Oct. 27, 2024) (invoking *Purcell*). Put simply, the "stay order is not a decision on the merits," *Merrill v. Milligan*, 142 S. Ct. 879, 879 (2022) (Kavanaugh, J., concurring), and thus provides no support for Intervenors.

## III. INTERVENORS PROVIDE NO BASIS TO DISTURB THE PANEL'S HOLDINGS AS TO THE DPOC AND DPOR REQUIREMENTS

The panel correctly affirmed the district court's holdings enjoining H.B. 2492's differential treatment of state- and federal-form registrants who do not submit DPOC and/or DPOR. As an initial matter, as with *Beals*, the Supreme Court's unexplained order reinstating a limited stay issued by this Court's motions panel shortly before the 2024 election provides no basis for disturbing the panel's reasoned decision. *See RNC v. Mi Familia Vota*, No. 24A164, 2024 WL 3795482 (Aug. 8, 2024) (invoking *Purcell*). This is particularly true given that Intervenors' stay briefing did not even address the separate ground for enjoining the relevant provision—namely, its conflict with the NVRA. *Id.*

10

### A. *LULAC* Decree

The panel correctly held that the *LULAC* Decree remains binding as a final judgment that has not been modified or set aside. Op.50-53. That holding is in line with this Court's precedent and that of other circuits. *E.g.*, *Taylor v. United States*, 181 F.3d 1017, 1024 (9th Cir. 1999) (en banc); *Hook v. Arizona Department of Corrections*, 972 F.2d 1012, 1016-1017 (9th Cir. 1992); *Thompson v. HUD*, 404 F.3d 821, 828 (4th Cir. 2005).

The origins of the *LULAC* Decree trace to the aftermath of litigation over Arizona's original DPOC requirement for voter registration, enacted in 2004. *See* A.R.S. §16-166(F). After its passage, the U.S. Election Assistance Commission (EAC) denied Arizona's request to include its DPOC requirement in Arizona's state-specific voter registration instructions on the federal form. *See ITCA*, 570 U.S. at 6. In 2013, the Supreme Court held that, pursuant to the NVRA's mandate that states "accept and use" the federal form, Arizona could not reject federal-form applications submitted without DPOC. *See id.* Arizona then again asked the EAC to add the DPOC requirement to Arizona's federal-form instructions; the EAC again denied the request, and Arizona unsuccessfully challenged that denial in court. *See Kobach*, 772 F.3d at 1188-1189, 1199, *cert. denied*, 135 S.Ct. 2891 (2015).

After *ITCA*, election officials in Arizona implemented a dual-voter registration system enforcing a DPOC requirement only for state and local elections.

Under this system, officials rejected state-form applications unaccompanied by DPOC while accepting federal-form applications unaccompanied by DPOC for federal elections only—creating so-called "federal-only" voters. 1-ER-0010. With such federal-form applications, election officials also determined if the Arizona Department of Transportation (ADOT) had an applicant's DPOC on file. 7-ER-1599-1600. If so, those registrants became full-ballot voters, i.e., entitled to vote in state and local elections as well as federal ones. *Id.* But Arizona officials ran this check only for federal-form applicants: State-form applicants who had not included DPOC were rejected entirely without such a check. *Id.*

The *LULAC* Decree stems from litigation challenging the constitutionality of this system of treating federal- and state-form applicants disparately. In 2018, the Arizona Secretary of State and Maricopa County Recorder agreed to resolve that litigation by entering into the *LULAC* Decree. The Decree requires that *all* applications submitted without DPOC, whether on the state or federal form, receive the ADOT check. All registrants then become full-ballot voters if DPOC is confirmed, and become federal-only voters if it is not. 7-ER-1606-1608.

As noted, to this day, no party has ever sought to modify the *LULAC* Decree. That is unsurprising: While a consent decree should be modified if federal law "has changed to make legal what the decree was designed to prevent," *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 388 (1992), the federal law that formed the basis

12

for the *LULAC* litigation—the First and Fourteenth Amendments to the U.S. Constitution—has not changed. Nor, contrary to Intervenors' argument, has *state* law meaningfully changed. As explained, the *LULAC* Decree was entered to enjoin the state practice of rejecting state forms without DPOC. The provision challenged here, A.R.S. §16-121.01(C), would simply reinstate that practice.

Intervenors' claim that Arizona's legislature can unilaterally abrogate or override the *LULAC* Decree is wrong. This Court en banc has explained that although, "in light of changes in the law or facts, a *court* may decide in its discretion to reopen and set aside a consent decree," a legislature (indeed even Congress) "may not *direct* a court to do so with respect to a final judgment," including a consent decree, "without running afoul of the separation of powers doctrine." *Taylor*, 181 F.3d at 1026, *quoted in* Op.52. Thus, as the panel explained, a state legislature cannot "nullify a final judgment entered by an Article III court." Op.52. And contrary to Intervenors' argument, that principle does not vary depending on whether the relief ordered is prospective or retrospective.

Intervenors also assert, Pet.12, that the panel's decision is in tension with *Miller v. French*, 530 U.S. 327 (2000). That too is wrong. In *Miller*, the Supreme Court approved of a federal statute that automatically stayed the implementation of certain prospective relief while motions to terminate that relief were pending before the federal courts, where the same federal statute had restricted courts' authority to

issue that sort of prospective relief any longer. *Id.* at 347-349. The distinctions here are instructive. In *Miller,* the parties were seeking to terminate the consent decree, something Intervenors here have never done. And in *Miller*, the new statute undermined the basis for prospective relief. Nothing in HB 2492 can affect the *constitutional* claims that were at issue in the litigation underlying the *LULAC* Decree. Ultimately, while *Miller* acknowledges that new legislative developments can sometimes form the basis for altering prospective relief, *Miller* also reaffirmed that *courts*—not legislatures—"ha[ve] the authority to alter the prospective effect of an injunction." *Id.* at 347.

Finally, Intervenors' reliance, Pet.12, on dicta from *Horne v. Flores*, 557 U.S. 433 (2009), fares no better. *Horne* endorsed "a flexible approach to Rule 60(b)(5) motions" by lower courts as the solution to concerns regarding institutional-reform consent decrees given the unique dynamics of such consent decrees, including "ha[ving] the effect of dictating state or local budget priorities" and "allocating revenues and resources" where "a durable remedy has been implemented." *Id.* at 448-50. Such institutional-reform concerns over resource allocation are not at play here, and Intervenors' efforts are in fact geared toward eviscerating the "durable remedy" of the *LULAC* Decree. But in any event, there was no Rule 60(b)(5) motion here.

Nor does *Martin v. Wilks*, 490 U.S. 755 (1989), have any bearing here. There, firefighters alleged a city and personnel board made promotion decisions affecting the firefighters' employment based on race, and the Supreme Court held that the firefighters could "challenge … *actions taken* under the consent decree." *Id.* at 758, 762 (emphasis added). Here, by contrast, Intervenors have intervened in a case in which plaintiffs seek to *enforce* a consent decree, rather than following the proper procedure of intervening and filing a Rule 60(b) motion seeking to modify that consent decree. This Court has rejected a similar effort to vitiate a consent decree in enforcement litigation. *Hook*, 972 F.2d at 1016-1017.

### B.   NVRA

Intervenors likewise provide no reason to disturb the panel's holding (Op.53) that the NVRA—which only permits states to require information "necessary" to assess eligibility—bars Arizona's DPOC and DPOR state form requirements as applied to federal elections. As the panel recognized, the state form "supplies proof of citizenship by an attestation." *Id.* This is a requirement under both the NVRA and Arizona law. 52 U.S.C. §20504(c)(2)(C); A.R.S. §16-152(A)(14). Attestation "is the *presumptive* minimum amount of information necessary for state election officials to carry out their eligibility-assessment and registration duties," *Fish v. Kobach*, 840 F.3d 710, 716-17, 737 (10th Cir. 2016), and it resolves concerns about proof of not only citizenship but also residency, Op.41. Intervenors put forward no evidence, at

15

any stage of proceedings, to rebut the sufficiency of attestation for these purposes or otherwise show either DPOC or DPOR are necessary for assessing eligibility. LUCHA Br.39–41, 44. The panel's application of the ordinary meaning of "necessary" in reaching these conclusions, Op.41, 53, was straightforward statutory interpretation and does not remotely justify rehearing.

Dicta in *ITCA* does recognize that under the NVRA, states may create their own registration forms that "may require information the Federal Form does not." 570 U.S. at 12. But any such additional requirements must still satisfy section 9's necessity requirement. Nothing in *ITCA*—or this Court's en banc decision in *Gonzalez v. Arizona*, 677 F.3d 383 (9th Cir. 2012)—suggests otherwise. In fact, the en banc Court explicitly noted in *Gonzalez* that "states may (but are not required to) create their own state mail voter registration forms for federal elections … *so long as these forms meet certain criteria in the NVRA*." 677 F.3d at 395 (emphasis added).[4]

---

[4] This Court's opinion at the preliminary-injunction stage in that same case—an opinion based on a "limited record," *Gonzalez I*, 485 F.3d at 1047—provides no basis for en banc review. As the panel here recognized, *Gonzalez I* left open whether and to what extent states may "'require their citizens to present evidence of citizenship when registering to vote.'" Op.54 (quoting *Gonzalez I*, 485 F.3d at 1051). In any event, that preliminary opinion—which allowed the DPOC requirement to go forward notwithstanding the Plaintiffs' NVRA challenge based in part on the "accept and use" provision—was ultimately superseded by both this Court's en banc ruling in *Gonzalez* and by *ITCA*.

16

Finally, the panel correctly rejected Intervenors' argument based on NVRA section 7, which requires public-assistance agencies to distribute the federal form or an "equivalent" form. 52 U.S.C. §20506(a)(6) (citing §§20508(a)(2), 20506(a)(2)). Arizona's DPOC and DPOR requirements make state forms *not* "equivalent," i.e., not "virtually identical," to the federal form. Op.42. Nor does Intervenors' invocation of *ITCA*, Pet.14, hold water. To the contrary, as the district court recognized (relying on *ITCA*), "[r]equiring public assistance agencies to use an 'equivalent' of the Federal Form 'guarantees that a simple means of registering to vote in federal elections will be available' for these individuals." 1-ER-82 (quoting *ITCA*, 570 U.S. at 12).

## CONCLUSION

This Court should deny rehearing en banc.


Respectfully submitted this 10th day of June, 2025.


*/s/ Danielle Lang*
CAMPAIGN LEGAL CENTER
Danielle Lang
Jonathan Diaz
Robert Brent Ferguson
1101 14th St. NW, Suite 400
Washington, DC 20005
(202) 736-2200
dlang@campaignlegalcenter.org
jdiaz@campaignlegalcenter.org
bferguson@campaignlegalcenter.org

17

**MAYER BROWN LLP**
Lee H. Rubin (CA# 141331)
Two Palo Alto Square, Suite 300
3000 EL Camino Real
Palo Alto, CA 94306-2112
(650) 331-2000
lrubin@mayerbrown.com

Daniel T. Fenske* (IL# 6296360)
71 S. Wacker Drive
Chicago, IL 60606
(312) 782-0600
dfenske@mayerbrown.com

Rachel J. Lamorte (NY# 5380019)
1999 K Street NW
Washington, DC 20006
(202) 362-3000
rlamorte@mayerbrown.com

**FREE SPEECH FOR PEOPLE**
Courtney Hostetler
John Bonifaz
28 S. Main St., Suite 200
Sharon, MA 02067
Telephone: (617) 249-3015
chostetler@freespeechforpeople.org
jbonifaz@freespeechforpeople.org

**DEPARTMENT OF JUSTICE**
**SAN CARLOS APACHE TRIBE**
Alexander B. Ritchie
Attorney General
Post Office Box 40
16 San Carlos Avenue
San Carlos, Arizona. 85550
Tel.  (928) 475-3344
Cel.  (928) 200-5120
Fax. (928) 475-3348

*Counsel for Plaintiffs-Appellees Living United for Change in Arizona, League of United Latin American Citizens, Arizona Students' Association, ADRC Action, Inter Tribal Council of Arizona, Inc., San Carlos Apache Tribe, and Arizona Coalition for Change*

**WILMER CUTLER PICKERING
HALE AND DORR LLP**
Seth P. Waxman
Christopher E. Babbitt
Daniel S. Volchok
Joseph M. Meyer
Britany Riley-Swanbeck
2100 Pennsylvania Avenue N.W.
Washington, D.C. 20037
(202) 663-6000
daniel.volchok@wilmerhale.com

*Counsel for Plaintiffs-Appellees the Democratic National Committee and the Arizona Democratic Party*

**MEXICAN AMERICAN LEGAL DEFENSE AND EDUCATIONAL FUND**
Ernest Herrera*
Erika Cervantes*
634 S. Spring St., 11th floor
Los Angeles, CA 90014
Telephone: (213) 629-2512
Email: ecervantes@maldef.org
Email: eherrera@maldef.org
*Admitted Pro Hac Vice*

**ORTEGA LAW FIRM**
Daniel R. Ortega Jr.
Ariz. Bar No. 005015
361 East Coronado Road, Suite 101
Phoenix, AZ 85004-1525
Telephone: (602) 386-445
Email: danny@ortegalaw.com

*Counsel for Plaintiffs-Appellees Promise Arizona and Southwest Voter Registration Education Project*

**ASIAN AMERICANS ADVANCING JUSTICE-AAJC**
Niyati Shah
Noah Baron
Terry Ao Minnis
1620 L Street NW, Suite 1050
Washington, DC 20036
Telephone: (202) 296-2300
Facsimile: (202) 296-2318
nshah@advancingjustice-aajc.org
nbaron@advancingjustice-aajc.org
tminnis@advancingjustice-aajc.org

**LATHAM & WATKINS LLP**
Sadik Huseny
Amit Makker
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
sadik.huseny@lw.com
amit.makker@lw.com

*Counsel for Plaintiffs-Appellees Arizona Asian American Native Hawaiian and Pacific Islander for Equity Coalition*

**ELIAS LAW GROUP LLP**
ELISABETH C. FROST
CHRISTOPHER D. DODGE
QIZHOU GE
250 Massachusetts Avenue NW, Suite 400
Washington, D.C. 20001
efrost@elias.law
(202) 968-4490

ROY HERRERA
DANIEL A. ARELLANO

JILLIAN L. ANDREWS
Herrera Arellano LLP
1001 N. Central Ave, Ste. 404
Phoenix, Arizona 85004
roy@ha-firm.com
(602) 567-4820

*Counsel for the Mi Familia Vota Plaintiffs-Appellees*

**CERTIFICATE OF COMPLIANCE**

In compliance with Federal Rule of Appellate Procedure 32(g), I certify that according to the word count feature of the word processing program used to prepare this brief, this brief contains 3,872 words, excluding the parts of the document exempted by Rule 32(f), and complies with the typeface requirements and length limitations of Rule 28 and Circuit Rule 28.1-1.

/s/ *Danielle Lang*
Danielle Lang

**CERTIFICATE OF SERVICE**

I certify that I electronically filed the foregoing response on June 10, 2025 with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

/s/ *Danielle Lang*
Danielle Lang