No. 24-3188 (consolidated with Nos. 24-3559 and 24-4029)

————————

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

————————

MI FAMILIA VOTA, *et al.*,

*Plaintiffs-Appellees*,

v.

ADRIAN FONTES, *et al.*,

*Defendants-Appellants*,

REPUBLICAN NATIONAL COMMITTEE, *et al.*,

*Intervenor-Defendants-Appellants.*

————————

On Appeal from the United States District Court
for the District of Arizona
Case No. 2:22-cv-00509-SRB (Consolidated)
Hon. Susan R. Bolton

————————

**NON-U.S. PLAINTIFFS-APPELLEES' RESPONSE TO STATE OF
ARIZONA AND ARIZONA ATTORNEY GENERAL'S PETITION FOR
REHEARING *EN BANC***

————————

ROY HERRERA
DANIEL A. ARELLANO
JILLIAN L. ANDREWS
Herrera Arellano LLP
1001 N. Central Ave, Ste. 404
Phoenix, Arizona 85004
roy@ha-firm.com
(602) 567-4820

ELISABETH C. FROST
CHRISTOPHER D. DODGE
QIZHOU GE
Elias Law Group LLP
250 Massachusetts Ave NW, Ste. 400
Washington, D.C. 20001
efrost@elias.law
(202) 968-4490

*Counsel for Mi Familia Vota Plaintiffs-Appellees*

ERNEST HERRERA
ERIKA CERVANTES
Mexican American Legal
Defense And Educational Fund
634 S. Spring St., 11th Floor
Los Angeles, CA 90014
(213) 629-2512
ecervantes@maldef.org
eherrera@maldef.org

DANIEL R. ORTEGA JR.
Ariz. Bar No. 005015
Ortega Law Firm
361 East Coronado Road, Suite 101
Phoenix, AZ 85004-1525
(602) 386-445
danny@ortegalaw.com

*Counsel for Attorneys for Promise Arizona and Southwest Voter
Registration Education Project Plaintiffs-Appellees*

*(Additional counsel listed in concluding signature blocks)*

ii

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................... iv

INTRODUCTION AND RULE 35(B) COUNTER-STATEMENT ......................... 1

BACKGROUND ....................................................................................... 2

  I.    Birthplace Requirement ................................................................ 2

        A.    The trial record shows birthplace information cannot be used to determine voter eligibility. ................................................. 3

        B.    The district court and panel both concluded, based on an extensive factual record, that the Birthplace Requirement violates the materiality provision. ................................................. 5

  II.   Voter-List Maintenance Requirements ........................................... 6

REASONS FOR DENYING REHEARING ................................................... 7

  I.    The panel properly applied the materiality provision to a developed record .......................................................................................... 7

  II.   The panel correctly remanded the discriminatory intent claim for application of the proper *Arlington Heights* standard ................................. 12

        A.    The panel correctly remanded for a more flexible application of *Arlington Heights*. ................................................................... 12

            1.    The panel's *Arlington Heights* holding was well-founded. ...... 12

            2.    Any "strong presumption of good faith" does not present a conflict with precedent. ................................................. 16

        B.    Promise Arizona has standing. .................................................... 18

CONCLUSION ..................................................................................... 19

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Abbott v. Perez*,
 585 U.S. 579 (2018) ..........................................................................13

*Anderson v. Liberty Lobby, Inc.*,
 477 U.S. 242 (1986) .........................................................................10

*Brnovich v. Democratic National Committee*,
 594 U.S. 647 (2021) .........................................................................14

*Doe I v. Cisco Sys., Inc.*,
 113 F.4th 1230 (9th Cir. 2024) ..................................................... 9, 15

*Fla. State Conf. of N.A.A.C.P. v. Browning*,
 522 F.3d 1153 (11th Cir. 2008)........................................................10

*Mi Familia Vota v. Fontes*,
 129 F.4th 691 (9th Cir. 2025) ..................................................... 2, 3, 8

*Miller v. Johnson*,
 515 U.S. 900 (1995) .........................................................................17

*N. Mariana Islands v. Lizama*,
 27 F.3d 444 (9th Cir. 1994) .............................................................11

*Schwier v. Cox*,
 340 F.3d 1284 (11th Cir. 2003) ........................................................8

*United States v. Carrillo-Lopez*,
 68 F.4th 1133 (9th Cir. 2023) ..........................................................17

*United States v. Patnaik*,
 125 F.4th 1223 (9th Cir. 2025) ........................................................9

*United States v. Uchimura,*
    125 F.3d 1282 (9th Cir. 1997) ...........................................................................10

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.,*
    429 U.S. 252 (1977) ........................................................................... 12, 16, 17

**STATUTES**

52 U.S.C. § 10101 ........................................................................................... 1, 6, 8

1993 Ariz. Laws ch. 98, § 10 .................................................................................3

A.R.S. § 16-121.01 .................................................................................................3

A.R.S. § 16-152 .....................................................................................................3

**FEDERAL RULES**

Fed. R. App. P. 40 ........................................................................................ 1, 8, 12

## INTRODUCTION AND RULE 35(B) COUNTER-STATEMENT

The Arizona Attorney General ("AG") seeks *en banc* review of (1) the panel's holding that, under the materiality provision of the Civil Rights Act, 52 U.S.C. § 10101(a)(2)(B), Arizona cannot reject qualified voter-registration applicants who do not disclose their birthplace, and (2) its remand directing the district court to reapply the *Arlington Heights* framework when assessing whether Arizona enacted House Bill 2243 ("HB2243") with discriminatory intent. Neither issue warrants rehearing.

*First*, the panel's application of the materiality provision turns on an extensive and largely unchallenged trial record. That record demonstrates that birthplace information is not—and cannot be—used by Arizona's election officials to assess voter qualifications. Applying the materiality provision's plain language, the panel correctly held that a requirement to provide such immaterial information cannot serve as a basis to reject registration applications. The AG's disagreement with the panel's reasoning reflects little more than a request for a do-over based on the AG's ever-changing definition of "materiality." It presents no conflict in circuit authority or issue of exceptional importance. *See* Fed. R. App. P. 40(b)(2)(A)-(D).

*Second*, the panel's remand for the district court to properly apply the *Arlington Heights* factors adheres to Supreme Court and Ninth Circuit precedent. The panel held only that the district court applied an improperly rigid version of

1

*Arlington Heights* by demanding direct evidence for every factor and failing to consider the totality of the circumstances. The panel did not find discriminatory intent or require the district court to reach any particular conclusion on remand. Rehearing would thus be premature as well as unnecessary.

At bottom, the AG's petition presents no split with Supreme Court or circuit precedent, nor does it identify any issue of jurisprudential urgency. The petition should be denied.

## BACKGROUND

### I.    Birthplace Requirement

Arizona's state-created voter-registration form has long included an optional field for registrants to note their "state or country of birth." *Mi Familia Vota v. Fontes*, 129 F.4th 691, 703 (9th Cir. 2025) ("*MFV*"). Before House Bill 2492 ("HB2492"), however, there was no requirement that an applicant provide this information to successfully register to vote. For example, Arizona's 2019 Election Procedures Manual expressly stated that "[f]ailure to provide state or country of birth … does not invalidate the State Form." 5-MFV-SER-0795. Millions of Arizonans have registered to vote without providing birthplace information and "approximately

2

one-third of existing voter registrations in Arizona lack birthplace information," 1-ER-0028.[1]

HB2492 changed this, requiring rejection of state-form voter-registration applications if the registrant fails to provide a birthplace. *See* A.R.S. §§16-121.01(A), 16-152(A)(7) ("Birthplace Requirement"). In contrast, voters who register using the federal form—which contains no birthplace field—are not required to provide birthplace information. *See* 2-MFV-SER-0337.

Several groups of plaintiffs, alongside the United States, challenged the Birthplace Requirement's lawfulness under the materiality provision.

A.    **The trial record shows birthplace information cannot be used to determine voter eligibility.**

The trial record overwhelmingly confirms that Arizona officials do not (and in fact cannot) use birthplace information to determine an applicant's qualification to vote. Arizona's procedures for determining voter qualifications—including documentary proof of citizenship, comparison with records from the Arizona Department of Transportation, and searching the U.S. Citizenship and Immigration Service's SAVE system—do not use birthplace, cannot be queried by birthplace, and in some cases, do not even include a birthplace field. *See* Doc. 154.1 at 5-8. An array

---

[1] Arizona formally designated the birthplace field as optional in 1993. *See* 1993 Ariz. Laws ch. 98, § 10. But no record evidence indicates the field was mandatory before then. *See* 129 F.4th at 721–22.

3

of Arizona election officials—including a former State Election Director and several county recorders—uniformly testified that birthplace is "immaterial to [a voter's] qualifications to register and vote" and cannot be used to verify eligibility. 3-MFV-SER-0472; *see* Doc. 154.1 at 8-9. The record also confirms that birthplace is not determinative of citizenship and that recorders have no way to determine whether a person's birthplace information is even accurate. Doc. 154.1 at 10.[2]

Expert testimony further confirmed that birthplace is not useful in identifying or distinguishing between voters. Birthplace data in Arizona's voter-registration database is riddled with typos, other errors, and ambiguous entries. 4-MFV-SER-0652–53, -0656–58. County recorders have no way to discern, for example, whether a "CA" entry means California or Canada. 4-MFV-SER-0597–98, -0624–25. And though the state form asks for an applicant's "state or country of birth," many instead provide their town, city, or county of birth. 4-MFV-SER-0598, -0657–58. Moreover, even consistent and accurate birthplace data would not be a useful identifier compared to other required information like name and birthdate, because many voters share the same state or country of birth. *See* Doc. 154.1 at 13, 14-15; 4-MFV-SER-0683.

---

[2] The AG now suggests that election officials might use this information to query the National Association for Public Health Statistics and Information Systems ("NAPHSIS"), Pet.11, but the record refutes this claim. County recorders consistently testified that they do not have access to NAPHSIS or any other databases allowing them to confirm birthplace. 4-MFV-SER-0744–45.

The record also shows that birthplace has little utility for any other purpose. For example, while birthplace can be used as a "security question" when a registrant calls a recorder's office, recorders testified that birthplace was much less useful than more personalized information like birthdate. *See* Doc. 154.1 at 15-16. And while the Election Procedures Manual references birthplace in relation to a handful of tasks, election officials consistently testified that they can perform each of those tasks without birthplace, and none have anything to do with determining whether a person is qualified to vote. *Id*. at 16-17. Nor do officials use birthplace for de-duplicating registrations. *Id*.

**B. The district court and panel both concluded, based on an extensive factual record, that the Birthplace Requirement violates the materiality provision.**

After careful consideration of this record, the district court concluded the Birthplace Requirement violates the materiality provision. That ruling was based on detailed findings of fact and a straightforward application of the provision's text. 1-ER-0026–30, -0078. In conducting its fact-intensive inquiry, the district court found that birthplace "is not dispositive of citizenship" and that recorders do not use birthplace information "to determine an applicant's eligibility to vote … [nor] to verify an applicant's identity." 1-ER-0026. The court further found that birthplace "cannot be used to directly verify [an] individual's citizenship or place of residence." 1-ER-0077. The court noted that Arizona had readily confirmed the qualifications of

5

millions of voters without birthplace information, "strongly indicat[ing] birthplace is immaterial" in such a determination. *Id*. Furthermore, recorders are instructed to accept state forms that include obviously *wrong* birthplace information so long as *something* is provided in the birthplace field—another strong indication that the information has no relation to determining voter qualifications. *Id*. The court thus concluded that "birthplace is not material to determining" voter eligibility. *Id*.

The panel affirmed over a dissent. It agreed with the district court that the Birthplace Requirement "violates the Materiality Provision because disclosing one's birthplace has no probable impact on and 'is not material in determining' an applicant's eligibility to vote." Doc. 242.1 ("Op.") at 58 (quoting 52 U.S.C. § 10101(a)(2)(B)). It also deemed the AG's claim of birthplace's usefulness to be "without basis" in the record. *Id*.

## II. Voter-List Maintenance Requirements

HB2243 amends Arizona's laws governing cancellation of voter registration. 1-ER-0013–14. Specifically, the law adds grounds for voter-registration cancellations and requires election officials to conduct frequent investigations into the citizenship status of voters through a monthly comparison of the Arizona Motor Vehicle Division's driver license database against the voter-registration database, as well as further investigation based on an official's "reason to believe" that a voter is not a U.S. citizen. Doc. 150.1 at 16-20.

The Arizona Legislature passed HB2243 amidst widespread false accusations of non-U.S. citizen voting in the 2020 presidential election—and despite a legislative audit in which the Legislature failed to adduce any evidence of non-citizen voter fraud. Doc. 150.1 at 2-3; 5-PromiseSER-706–10. The record also shows that the Arizona Free Enterprise Club authored HB2243 (and HB2492), played a vital role in its passage, and used incendiary language throughout the legislative process, including by disparaging non-U.S. citizens as "illegals" when promoting HB2243. l-ER-0040 n.34; 2-PromiseSER-170.

Despite this evidence, as well as testimony that a white committee chairman told a Latino legislator that the Voting Laws were necessary because "[i]t's your people over there in your neighborhood that are doing this," the district court found that the Arizona Legislature did not enact HB2243 with discriminatory intent. *See* 1-ER-0113–0115; *see also* 5-PromiseSER-758–59. The panel reversed that finding and remanded the question of discriminatory intent, holding that "the district court misapplied the *Arlington Heights* framework by requiring Plaintiff-Appellees to provide direct evidence of racial animus for every prong of the test." Op.66.

## REASONS FOR DENYING REHEARING

## I. The panel properly applied the materiality provision to a developed record.

The materiality provision prohibits states from denying the right to vote "because of an error or omission on any record or paper relating to any application,

7

registration … if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election." 52 U.S.C. § 10101(a)(2)(B). Congress enacted this provision to "address the practice of requiring unnecessary information for voter registration with the intent that such requirements would increase the number of errors or omissions on the application forms, thus providing an excuse to disqualify potential voters." *Schwier v. Cox*, 340 F.3d 1284, 1294 (11th Cir. 2003).

The panel's (and the district court's) holding that birthplace information is "not material" to determining whether a person is qualified to vote in Arizona was based on a straightforward application of statutory text to a well-developed trial record. The panel first held that "material" information "need not be absolutely essential to determine if a person is eligible to vote, but it must have probable impact on eligibility to vote." *MFV*, 129 F.4th at 720. That statutory construction is well-founded. *See id.* at 720 n.5 (citing dictionary definitions). And the lopsided trial evidence confirms that birthplace is not likely to help officials determine whether a person is qualified to vote. Doc. 154.1 at 39-46. *En banc* review is not necessary for such a straightforward application of statutory text to record evidence and the AG fails to show any conflict within this circuit or "questions of exceptional importance" warranting such review. Fed. R. App. P. 40(b)(2).

The AG first quarrels with the fact-bound question of birthplace's "useful[ness]" in determining voter qualification. Pet.18. That argument is an improper invitation for the full Court to third-guess the district court's factual findings, with which the panel found no error. That is no reason for *en banc* review, *cf. Doe I v. Cisco Sys., Inc.*, 113 F.4th 1230, 1235 (9th Cir. 2024), particularly where the AG cannot point to *any* election-official testimony that birthplace information is even minimally useful for determining voter qualifications.[3]

Next, the AG faults the panel for its definition of "material"—"probable impact on eligibility to vote"—suggesting it should have defined the term as "could have affected or influenced." Pet.18-19. But the AG cites no Ninth Circuit precedent supporting that reading of the materiality provision, nor does she explain how the panel's definition clashes with the dictionary definitions it relied upon in the decision. *See* Op.56. Instead, the AG cites a *criminal case—United States v. Patnaik*, 125 F.4th 1223, 1225 (9th Cir. 2025)—applying the term "material" in a distinctly different context. As the Eleventh Circuit explained in a case involving the materiality provision, the "term 'material' not surprisingly signifies different degrees

---

[3] The AG selectively quotes the district court's observation that "election officials 'can sometimes use birthplace'" information, Pet.11, 19 (quoting 1-ER-0029), but omits its explanation that these "other administrative [uses]" do not "render birthplace material *in determining a voter's eligibility*," 1-ER-0078 (emphasis added)—the inquiry posed by the materiality provision.

9

of importance in different legal contexts." *Fla. State Conf. of N.A.A.C.P. v. Browning*, 522 F.3d 1153, 1173 (11th Cir. 2008). In particular, the court noted, in the "criminal …. context, materiality seems to take on a much lower evidentiary threshold" than other contexts. *Id.*; *see also* 1-ER-0140. Here, the panel's definition of "material" is in keeping with the meaning of the term in this and in numerous other legal contexts. *See, e.g.*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (defining "material fact" for the purposes of summary-judgment motions as facts that "might affect the outcome" of the case); *United States v. Uchimura*, 125 F.3d 1282, 1285 (9th Cir. 1997) (defining materiality for purposes of tax fraud cases as "necessary to a determination of whether" tax is owed); *see also* Doc. 154.1 at 29 n.10.

In any event, the AG did not present her current watered-down definition of "material" to the panel or the district court. *Compare* Doc. 104.1 at 42 (arguing information is "material" to voter qualification if it is "significant" in that determination) *and* ECF No. 364 at 12 (arguing information is material if it is "useful"), *with* Pet.19 (arguing definition should be "could have affected or influenced"). In fact, the AG's current definition appears *nowhere* in her merits brief. *See* Doc.104.1. The AG cannot plausibly contend the panel's definition conflicts with settled circuit authority when she cannot even settle on one herself. Indeed, this Court ordinarily "refuse[s] to consider on petitions for rehearing arguments not

10

raised in a brief or at oral argument" during the panel stage. *N. Mariana Islands v. Lizama*, 27 F.3d 444, 448 (9th Cir. 1994). Further still, the AG fails to explain how her most recent preferred definition of "material" would impact the outcome of this case; the record so lopsidedly establishes the immateriality of birthplace information that the precise definition of "material" is unlikely to change the outcome. *See* Doc. 154.1 at 31-32.

Finally, the AG's only argument that this case is "exceptionally important" is to point to the state's "strong interest in 'carefully identifying all voters.'" Pet.2. But the panel majority and district court found the materiality provision was violated *because* overwhelming evidence showed birthplace information is *not* valuable in "identifying all voters"—or any. Again, testimony confirmed that Arizona election officials "do not use birthplace information to determine an applicant's eligibility to vote, nor do county recorders need birthplace to verify an applicant's identity." Op.58. The AG's argument is nothing but a request for a do-over, despite having failed to adduce *any* evidence of materiality at trial. That is no reason for *en banc* review.

11

**II.    The panel correctly remanded the discriminatory intent claim for application of the proper *Arlington Heights* standard.**

The panel also properly remanded the discriminatory-intent challenge to HB2243 so that the district court could properly apply the flexible, fact-intensive standard that governs such claims. *See* Op.31-33, 74 (citing *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977)). Petitioners' (*i.e.*, the AG and Intervenors) rehearing petitions fail to raise any of the grounds for rehearing under Rule 40(b) as to this issue. The panel was correct to remand for a more flexible analysis and rightly held that Promise Arizona has standing to bring this claim.

**A.    The panel correctly remanded for a more flexible application of *Arlington Heights*.**

**1.    The panel's *Arlington Heights* holding was well-founded.**

Petitioners do not engage with the panel's reasoning, instead asserting the panel improperly "reweighed" evidence of discrimination. Not so. The panel held simply that "the district court applied a heightened version of the *Arlington Heights* analysis to the facts—insisting that Plaintiff-Appellees directly link the motive of the Legislature to every piece of evidence offered under each prong of the *Arlington Heights* framework." Op.64. And because the district court "imposed a higher evidentiary standard than that required by the *Arlington Heights* test analyzing the 'totality of circumstances,' the district court clearly erred." *Id.* at 64–65.

The panel's decision followed established precedent. At every step of the *Arlington Heights* analysis, the panel identified how the district court's analysis

12

conflicted with the flexible determination that *Arlington Heights* demands, including consideration of circumstantial evidence of discrimination.

### a. The panel correctly decided there is not a "nexus" requirement as to historical discrimination.

The panel rightly held that "the district court misapplied the *Arlington Heights* framework by requiring Plaintiff-Appellees to provide direct evidence of racial animus for every prong of the test, rather than applying a totality of the circumstances analysis that also took into account circumstantial evidence." Op.64-66. The panel explained that "[t]he district court's 'nexus' requirement could not be satisfied, absent an unambiguous admission from the Legislature that the purpose of the Voting Laws was to perpetuate Arizona's 'well-documented history of voting discrimination.'" *Id.* at 65 (citations and quotation marks omitted).

Intervenors attempt to locate a "nexus" requirement in *Abbott v. Perez*, 585 U.S. 579 (2018), a redistricting case with questionable applicability to this suit. *Abbott* imposes no such requirement. There, the Supreme Court held the lower court improperly "imposed on the State the obligation of proving that the 2013 Legislature had experienced a true 'change of heart'" after prior redistricting plans that were tainted by discrimination. *Id.* at 605. That holding is many steps removed from the supposed "nexus" requirement Intervenors seek.

13

      **b.**     **The panel correctly held the district court erred in its legislative-history analysis and distinguished the evidence here for that prong from that in *Brnovich*.**

The panel properly held that by "requiring direct evidence" in the legislative history "that the Legislature was not acting out of sincerely held beliefs, the district court misapplied *Arlington Heights*." Op.68. It also correctly held that *Arlington Heights* requires viewing the legislative history in its totality, including considering the racially coded appeals of the Arizona Free Enterprise Club and assertions of non-U.S. citizens voting, before finding that the "legislative record lacks any indicia of a nefarious motive." Op.70-71 (citations omitted). The lobbying group, which used false claims of voter fraud and offensive language in support of the bill, wrote HB2243 and advocated for its passage even after a gubernatorial veto. The Arizona House Speaker—who intervened in this case—referred to HB2243 as "their" (meaning the Free Enterprise Club's) bill. Op.68-70. Evidence of the Free Enterprise Club's role was undeniably relevant, even absent "direct evidence showing that every member of the Legislature relied upon the Free Enterprise Club's coded discriminatory appeal." Op.71. Remand to allow the district court to consider that evidence is appropriate.

Intervenors rely (Pet.16-17) on *Brnovich v. Democratic National Committee*, 594 U.S. 647 (2021), but the facts there bear little resemblance to those here. Unlike in *Brnovich*, where the Supreme Court upheld a district court's refusal to impute a

14

single legislator's intent to the entire legislature based on that legislator's reliance on an offensive video, "the Free Enterprise Club was involved with the Voting Laws' enactment from start to finish, from conception to passage," Op.70. Contrary to Intervenors' argument, the Free Enterprise Club did not simply make an "isolated" mention of the term "illegal," Pet.16, but rather put that term in the heading of an article-like electronic mail to legislators when promoting both HB2492 and the bill that was later passed as HB2243, Op.23; 1-ER-0040 n.34.

The panel also discussed the political climate in Arizona leading up to the enactment of HB2243, noting the repeated claim that there was illegal voting by non-U.S. citizens, "even though the Legislature's own audit contradicted" that claim. Op.67 n.7. In response, Petitioners merely quibble over certain pieces of evidence—issues that do not warrant *en banc* review. *Doe I*, 113 F.4th at 1235.

### c. The panel correctly held the district court failed to examine the departures from normal procedure and impact analyses evidence in context.

Petitioners fail to show that the panel's holdings on departures from normal procedure and disparate impact conflict with precedent. The panel held the district court erred by not viewing the departures from normal legislature procedure evidence in the totality of all the evidence. *See* Op.72 ("The district court should have viewed those departures from typical legislative procedure in the context of the totality of the circumstances"). The panel's remand to allow consideration of that

15

evidence in context appropriately requires the district court to apply the correct standard, without prejudging the outcome or second-guessing the weighing of the evidence.

Intervenors similarly fail to identify any conflict with precedent on the impact factor. The panel correctly held the district court erroneously required Plaintiffs to show the Arizona Legislature enacted HB2243 "*because of* any impact on minority voters or naturalized citizens." Op.73. Plaintiffs never argued that disparate impact was dispositive alone, but it is part of the totality analysis, and the panel rightly required the district court to consider it as part of the analysis. *Id*.

Because the petitions fail to identify any conflicts between precedent and the panel's instructions as to the application of *Arlington Heights* on remand, rehearing is unwarranted.

### 2. Any "strong presumption of good faith" does not present a conflict with precedent.

The "strong presumption of good faith" Petitioners invoke (AG Pet.23; Intervenors Pet.19) does not show a conflict with any binding precedent. The panel properly took into account any such presumption, as *Arlington Heights* itself contemplates that because legislative bodies "are properly concerned with balancing numerous competing considerations that courts refrain from reviewing the merits of their decisions, absent a showing of arbitrariness or irrationality." 429 U.S. at 265. Nonetheless, "racial discrimination is not just another competing consideration," and

"[w]hen there is a proof that a discriminatory purpose has been a motivating factor in the decision, this judicial deference is no longer justified." *Id*. at 265-66.

Petitioners cite (Intervenors Pet.19; AG Pet.23) this Court's mention of a "presumption of good faith" in *United States v. Carrillo-Lopez*, 68 F.4th 1133, 1140 (9th Cir. 2023). But such a presumption is not a talisman that insulates legislative action from review. Petitioners never explain how such a presumption either precludes a finding of discriminatory intent here or could ever be overcome. In reality, *Carrillo-Lopez*—which the panel majority repeatedly cited, Op.66, 73—does not preclude all circumstantial evidence of discrimination. It merely held that it was error to infer discriminatory intent based on an act of Congress enacted 23 years prior to the law in question and other unrelated evidence. 68 F.4th at 1153. That does not mean the presumption can *never* be overcome; indeed, the Supreme Court case cited by *Carrillo-Lopez* for the presumption—*Miller v. Johnson*, 515 U.S. 900 (1995)—itself upheld a finding that race unlawfully predominated in the drawing of a redistricting map based on circumstantial evidence. *See id.* at 915-16, *cited in Carrillo-Lopez*, 68 F.4th at 1140.

In any event, the district court can consider and weigh the relevance of a "presumption of good faith" in light of all the facts in this case when it applies the proper *Arlington Heights* analysis on remand. Nothing about the panel's decision prejudges that analysis, much less justifies *en banc* review.

17

### B. Promise Arizona has standing.

Petitioners raise no grounds for rehearing regarding the Promise Arizona Plaintiffs' representational standing to pursue their cross-appeal, standing the panel held Promise Arizona has in part because its members face imminent harm. Op.31-33. Nor do Petitioners challenge the district court's holding that Promise Arizona separately has direct standing as an organization to bring its claims. 1-ER-0066.

The panel's finding of representational standing does not conflict with any circuit or Supreme Court precedent. AG Pet.20-21. Absent the district court's injunction, the "reason to believe" provision would likely cause Promise Arizona members, many of whom are naturalized U.S. citizens, to be imminently subject to a citizenship check or voter registration cancellation that native-born citizens will not face. Op.31-32. The record shows the "Reason to Believe" provision will have a discriminatory impact in subjecting naturalized citizens to database checks based on the subjective predilections of county recorders. 1-ER-0078–0085; *see also* ECF No. 214.1 at 20-21 ("Promise Arizona Br."). Petitioners also ignore the fact that the Motor Vehicle Division database-comparison provision of HB2243 might be enjoined if the law is found to have been enacted with discriminatory intent. This provision would apply to all naturalized U.S. citizen voters registered in Arizona who have not updated their state driver licenses or identifications. They would therefore be affected on a monthly basis with citizenship checks or cancellation.

18

Promise Arizona Br. 20-21. This will affect Promise Arizona members because many of them are recently naturalized citizens who will be subjected to repeated citizenship checks until they change their MVD credential. *See* 1-ER-0033; *see also* Promise Arizona Br. 28-30.

## CONCLUSION

The petition for rehearing *en banc* should be denied.

Date: June 10, 2025                                    Respectfully Submitted,

                                                      /s/*Elisabeth C. Frost*

Ernest Herrera                                        ELISABETH C. FROST
Erika Cervantes                                       CHRISTOPHER D. DODGE
Mexican American Legal Defense and                    QIZHOU GE
Educational Fund                                      Elias Law Group LLP
634 S. Spring St., 11th floor                         250 Massachusetts Avenue NW,
Los Angeles, CA 90014                                 Suite 400
Telephone: (213) 629-2512                             Washington, D.C. 20001
ecervantes@maldef.org                                 efrost@elias.law
eherrera@maldef.org                                   (202) 968-4490

Daniel R. Ortega Jr.                                  ROY HERRERA
Ariz. Bar No. 005015                                  DANIEL A. ARELLANO
Ortega Law Firm                                       JILLIAN L. ANDREWS
361 East Coronado Road, Suite 101                     Herrera Arellano LLP
Phoenix, AZ 85004-1525                                1001 N. Central Ave, Ste. 404
(602) 386-445                                         Phoenix, Arizona 85004
danny@ortegalaw.com                                   roy@ha-firm.com
                                                      (602) 567-4820

*Attorneys for Promise Arizona and*
*Southwest Voter Registration Education*              *Counsel for the Mi Familia Vota*
*Project Plaintiffs-Appellees*                        *Plaintiffs-Appellees*

19

**Campaign Legal Center**
Danielle Lang
Jonathan Diaz
Robert Brent Ferguson
1101 14th St. NW, Suite 400
Washington, DC 20005
(202) 736-2200
dlang@campaignlegalcenter.org
jdiaz@campaignlegalcenter.org
bferguson@campaignlegalcenter.org

**Mayer Brown LLP**
Lee H. Rubin (CA# 141331)
Two Palo Alto Square, Suite 300
3000 EL Camino Real
Palo Alto, CA 94306-2112
(650) 331-2000
lrubin@mayerbrown.com

Daniel T. Fenske (IL# 6296360)
71 S. Wacker Drive
Chicago, IL 60606
(312) 782-0600
dfenske@mayerbrown.com

Rachel J. Lamorte (NY# 5380019)
1999 K Street NW
Washington, DC 20006
(202) 362-3000
rlamorte@mayerbrown.com

**Free Speech for People**
Courtney Hostetler
John Bonifaz
28 S. Main St., Suite 200
Sharon, MA 02067
Telephone: (617) 249-3015
chostetler@freespeechforpeople.org
jbonifaz@freespeechforpeople.org

NIYATI SHAH
NOAH BARON
TERRY AO MINNIS
Asian Americans Advancing
Justice-AAJC
1620 L Street NW, Suite 1050
Washington, DC 20036
Telephone: (202) 296-2300
Facsimile: (202) 296-2318
nshah@advancingjustice-aajc.org
nbaron@advancingjustice-aajc.org
tminnis@advancingjustice-aajc.org

Sadik Huseny
Amit Makker
Latham & Watkins LLP
505 Montgomery Street, Suite 2000
San Francisco, CA 94111-6538
Telephone: (415) 391-0600
Facsimile: (415) 395-8095
sadik.huseny@lw.com
amit.makker@lw.com

*Counsel for the Equity Plaintiffs-Appellees*

20

**Department of Justice**
**San Carlos Apache Tribe**
Alexander B. Ritchie
Attorney General
Post Office Box 40
16 San Carlos Avenue
San Carlos, Arizona. 85550
Tel.  (928) 475-3344
Cel.  (928) 200-5120
Fax. (928) 475-3348

*Counsel for Plaintiffs-Appellees Living
United for Change in Arizona, League
of United Latin American Citizens,
Arizona Students' Association, ADRC
Action, Inter Tribal Council of Arizona,
Inc., San Carlos Apache Tribe, and
Arizona Coalition for Change*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Rule 32(g) of the Federal Rules of Appellate Procedure, I hereby certify that according to the word count feature of the word processing program used to prepare this brief, this brief contains 4104 words, excluding the parts of the document exempted by Rule 32(f), and complies with the typeface requirements and length limits of Rules 27(d)(2)(A) and 32(c), and Circuit Rule 27-3.

*s/Elisabeth C. Frost*
Elisabeth C. Frost